IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICHARD E. KARTMAN,

        Plaintiff,

v.                                                         Civil Action No. 5:10CV106
                                                        (Judge Stamp)

SHANNON MARKLE, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On October 4, 2010, the *pro se* Plaintiff filed a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of West Virginia. United States Magistrate Judge Mary E. Stanley later issued an order transferring the case to this district. On November 15, 2010, Plaintiff was granted permission to proceed *in forma pauperis*, although he was required to pay an initial partial filing fee, which he did in full on March 23, 2011. On March 18, 2011, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not warranted at that time. Therefore, the Clerk was directed to issue 21-day summonses and forward copies of the complaint to the United States Marshal Service to effect service of process upon the defendants. The undersigned also directed Defendants to answer the complaint. On April 18, 2011, Defendant Markle filed a Motion to Dismiss. On May 31, 2011, because Officers Skidmore and Stancoti failed to plead to or otherwise defend against the complaint, Plaintiff filed a Request to the Clerk for Entry of Default against them. On June 15, 2011, the Honorable Frederick P. Stamp, Jr. issued an Order Directing Clerk to Enter Default against them. On June

1

17, 2011 defendants Skidmore and Stancoti filed a Motion to Vacate the Default, and on July 7, 2011, Judge Stamp issued an Order Granting Defendants' Motion to Vacate Judgment. Thereafter, on July 22, 2011, Defendants Skidmore and Stancoti filed a Motion for Summary Judgment. On October 21, 2011 Plaintiff filed his Reply in Opposition to Defendant Markle's Motion to Dismiss, and also on October 21, 2011, Plaintiff filed a Reply in Opposition to Defendants Skidmore and Stancoti's Motion for Summary Judgment. On November 4, 2011, Defendants Markle, Skidmore and Stancoti filed a Reply to Plaintiff's Response. On November 28, 2011, Plaintiff filed a Reply to Brief in Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment and Motion to Dismiss.

## II. THE PLEADINGS

### A.     The Complaint

During the period relevant to this complaint, Plaintiff was incarcerated at Central Regional Jail in Sutton, West Virginia.[1] In his complaint, Plaintiff asserts Defendants have violated his Eighth Amendment rights by acting with deliberate indifference to his physical safety. More specifically, he alleges that a dispute developed between himself and three other inmates at Central Regional Jail, Antonio Ward, Cory Tanner, and "Porky" Clark. Plaintiff argues that Defendant Long knew of the dispute between the inmates but still chose to move Plaintiff into cell block A-2, where the other inmates were housed. He also alleges he tried to inform Defendant Skidmore of the problem but that he refused to move Plaintiff to a different cellblock. Then, three weeks after Plaintiff tried to inform Defendant Skidmore of the problem, Antonio Ward, along with another inmate named Kenny Kennedy, assaulted him. Plaintiff also

---

[1] Plaintiff has since been transferred and is currently incarcerated at Mount Olive Correctional Complex in Mount Olive, West Virginia.

asserts that Defendant Stancoti and an unnamed corrections officer witnessed the altercation involving these inmates but did not take immediate action to intervene.

Plaintiff was later moved to a different cell block; however, Cory Tanner was later moved into the same cell block. Plaintiff contends he informed Defendant Skidmore of the problem. Two other inmates were also moved to the same cell block, Mr. Jefferson and Mr. Jarrell, and they physically assaulted him in his cell. Plaintiff alleges that Mr. Stancoti witnessed the assault but again did not take immediate action to intervene.

Plaintiff next alleges that Defendant Skidmore allowed him to be placed in line with inmate Cory Tanner, even though there was a keep away order in place. Plaintiff claims that while he was in line with Mr. Tanner, he tried to punch Plaintiff.

Finally, Plaintiff alleges that he suffered back injuries from the assaults and that he did not receive the medical attention he needed to treat his injuries. As relief for all these claims, Plaintiff seeks punitive and compensatory damages of "no less than ten thousand dollars from each defendant in their individual capacity" and he also asks for injunctive relief to get the appropriate medical attention for his injuries.

**B.** **Defendants' Motions**

Defendant Markle, in support of his Motion to Dismiss, alleges that:

1. His actions were in furtherance of his official duties so Plaintiff's claim is barred by the Eleventh Amendment and the Will Doctrine;

2. He is entitled to qualified or official immunity; and

3. Plaintiff's claims should be barred for failure to exhaust administrative remedies.

Defendants Skidmore and Stancoti, in support of their Motion for Summary Judgment, allege that:

1. Plaintiff's claims should be dismissed for failure to exhaust administrative remedies;

2. They are entitled to qualified immunity because they were performing discretionary functions; and

3. That Plaintiff has only suffered *de minimus* injuries and therefore cannot prevail on his Eighth Amendment claims.

## C. Plaintiff's Reply

In Plaintiff's Reply to Defendant Markle's Motion to Dismiss, Plaintiff argues that:

1. He did fully exhaust his administrative remedies;

2. He filed suit against Defendant in his individual and official capacity and therefore is not entitled to immunity under the Eleventh Amendment or the Will Doctrine; and

3. His claims are not barred under the doctrines of qualified or official immunity because Defendant violated a clearly established constitutional right.

In Plaintiff's Reply to Defendants Skidmore and Stancoti's Motion for Summary Judgment, he argues that:

1. His claims are not barred under the doctrines of qualified or official immunity because Defendants violated a clearly established constitutional right;

2. All named defendants failed to protect him from assaults and therefore have caused him to suffer more than de minimus injuries; and

3. He did fully exhaust his administrative remedies.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1356

(1990). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts have long cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitled him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not asserts "detailed factual allegation," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable," Id. Therefore, in order for a complaint to survive a dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim had facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. <u>Summary Judgment</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex,</u> 447 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id</u>. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>.

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

## IV. ANALYSIS

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes" and is required even when the relief sought is not available. Porter, 534 U.S. at 524; Booth, 532 U.S. at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth, 532 U.S. at 741 n.6.

According to the inmate handbook for the Regional Jail Authority, the Regional Jail Authority has a three-step grievance process. First, the prisoner must file a Level One grievance with the Administrator on an inmate grievance form which is to be provided by jail personnel. If

7

unsatisfied with the Level One decision, the prisoner may proceed to Level Two by filing an appeal with the Chief of Operations. Such appeal must be filed, in writing, within five days of the receipt of the Administrator's decision and must include a copy of the initial complaint and the Administrator's decision. Within five (5) days of receipt of a Level Two Decision, an inmate may request a review by the office of the Executive Director. The inmate must mail copies of the original Complaint and copies of all responses to the office of the Executive Director, Regional Jail Authority.

Here, to meet their initial burden of establishing Plaintiff has not exhausted his administrative remedies, Defendants have provided the Court with an affidavit from John L. King, II, Chief of Operations for the West Virginia Regional Jail and Correctional Facility Authority. In his affidavit, Mr. King states that the Plaintiff "has not fully availed himself of the grievance process." (Def. Markle's Mot. Summ. J., Exh 1.) Moreover, Defendants have shown that Plaintiff's complaint states that he never presented the facts relating to his complaint via the state prisoner grievance procedure, although his later pleadings change this response. Thus, Defendants' motions establish their initial burden under Federal Rule of Civil Procedure 56(c) of demonstrating the absence of a genuine issue of material fact.

Therefore, as previously explained, in order to survive Defendants' motion for summary judgment or dismissal, Plaintiff must set forth facts showing there is a genuine issue for trial. To carry this burden, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita, 475 U.S. at 856 (citing DeLuca v. Atlantic Refining Co., 176 F.2d 421, 423 (2d Cir. 1949)). This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial."

Anderson, 477 U.S. at 246. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50.

In this instance, the plaintiff must provide probative evidence to show that he exhausted his administrative remedies on the issues raised in this complaint. As proof, Plaintiff now claims that he filed four grievances, one in September 2008, one in October 2008, one on November 3, 2008, and one on November 8, 2008. (Pl's Decl. 1-2.) Plaintiff, however, has not been able to produce copies of either of these grievance forms. He did produce an undated letter to Defendant Markle that refers to a grievance he previously filed, and in it he mentions the grievance against Officer Skidmore. While this letter, and the other letters to Defendant Markle that Plaintiff attached to his complaint may be enough evidence to show he has exhausted his administrative remedies with respect to Defendants Skidmore and Stancoti, none of these attachments or the Declaration itself provides evidence that Plaintiff properly filed grievances against Defendant Markle. The letter was addressed to Defendant Markle, but it does not state any actionable conduct on the part of Defendant Markle, thus Defendant Markle could not reasonably have interpreted Plaintiff's grievances in a manner consistent with the claims raised against him in the instant complaint.

As to the second grievance Plaintiff claims to have filed, Plaintiff again failed to produce a copy of this grievance form. Instead, Plaintiff produced copies of two unrelated grievances filed later that month regarding a back injury he suffered during a work-related fall and unclean showers. (Pl's Attachment 2.) He also produced a copy of a letter he wrote to Defendant Markle about his work-related fall and the unclean showers, but the letter makes no mention of the other grievance form he allegedly filed related to the events cited in his complaint. Again, importantly,

this letter was addressed to Defendant Markle, it is highly unlikely that the grievance to which the letter refers was in regard to actionable conduct by Defendant Markle.

Finally, with respect to the grievance forms Plaintiff allegedly filed on November 3, 2008 and November 8, 2008, Plaintiff has again failed to provide this Court with copies of the grievances. Plaintiff argued that his copies of these were confiscated when he was sent to segregation, and he produced a copy of the grievance form he filed about having these documents confiscated. (Pl's Decl. 2.) However, the West Virginia Division of Corrections responded to these claims and determined that the documents were not confiscated and Plaintiff was in control of them at all times. (Pl's Attachment 3.) This tends to show that the West Virginia Divisions of Corrections responds to grievances properly filed with it, and that if Plaintiff had actually filed the grievances he claimed he did, there would be documentation of them.

The Court thus finds that, although Plaintiff makes general statements in his Declaration Concerning of Exhaustion of Administrative Remedies, he has failed to provide copies of these grievances, has failed to provide verifiable dates for these alleged grievance filings, has not submitted grievance numbers, and has not offered evidence that calls into question the grievance records and procedures followed at Central Regional Jail. See Sylva Development Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)(while a party opposing a motion for summary judgment is entitled to reasonable inferences, "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary")(internal citations omitted). Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Markle be dismissed without prejudice for failure to exhaust administrative remedies. However, because Plaintiff provided additional evidence that he may

have filed grievances with respect to Defendants Skidmore and Stancoti, as evidenced in Attachment One to his Declaration Concerning Exhaustion of Administrative Remedies, the Court must continue to evaluate the claims raised against these two defendants.

   B. **Qualified Immunity**

Because the Court finds that Plaintiff arguably exhausted his administrative remedies with respect to Defendants Stancoti and Skidmore, it must next address their arguments that they are entitled to qualified immunity. With regard to qualified immunity, the United States Supreme Court has provided that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). The analysis of the defense of qualified immunity is examined using a two-step analysis. Saucier v. Katz, 533 U.S. 194 (2001). The first step is to determine whether the facts alleged show that the defendants' conduct violated a constitutional right. Id. at 201. If the facts so viewed do not establish a violation of a constitutional right, the plaintiff cannot prevail, and "there is no necessity for further inquiries concerning qualified immunity." Id. However, if a favorable view of the facts does establish such a violation, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. Id. If the right was not clearly established, the defendants are entitled to qualified immunity. Id.

Here, Plaintiff alleges that Officers Skidmore and Stancoti failed to protect him from attacks by other inmates and to respond quickly after the attacks began. Deliberate indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). However, not every injury suffered by

11

an inmate at the hands of other inmates translates into constitutional liability for the prison officials responsible for the Plaintiff's safety. See Farmer v. Brennan, 511 U.S. 825, 835 (1994)(holding that a prison official may be held liable only if he "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."). The test is not whether an official knew or should have known of the possibility of harm, but whether he did in fact know of it and consciously disregarded that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. While the objective information known to the official may be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive.

Here, Plaintiff has failed to show his Eighth Amendment rights were violated because he has not shown that Defendants Skidmore and Stancoti knew of a substantial risk of serious harm to him and consciously disregarded that risk. Plaintiff has not made any allegations that Defendant Stancoti knew that inmates were going to assault him on October 2, 2008. Although Plaintiff alleges that Officer Stancoti heard inmates threaten him on that date, Plaintiff also alleges that inmates were verbally threatening him for approximately one month while he was in cell block A-1, but they never acted on those verbal threats. Plaintiff has failed to show there was reason for Officer Stancoti to take this incident as anything other than another empty threat or attempt at harassment. Additionally, Plaintiff appears to argue that his injuries could have been avoided if Defendant Stancoti had responded more quickly to diffuse the fight. He claims that it took Defendant Stancoti 19 minutes to respond. However, Officer Stancoti's report indicates that while he watched inmates Kennedy and Ward stand in front of Plaintiff's cell for around 19 minutes, after they actually went into Plaintiff's cell and chased him into the day room, he and a

group of officers went to the day room to respond and took Plaintiff to the Medical Department for treatment. Following treatment, they had him moved into protective custody that night and told him that he would remain there permanently. Finally, Plaintiff also alleges that Officer Stancoti should have responded more quickly to his attack on November 5, 2008. However, Officer Stancoti did respond when there were other officers to respond with him, and they again took Plaintiff to the Medical Department after the assault.

With respect to Officer Skidmore, Plaintiff alleges that after he was moved to another cell block, he told Officer Skidmore that the same verbal assault problems were starting up again, but Officer Skidmore did nothing to respond. Here again, Plaintiff has failed to show that Defendant Skidmore knew of a substantial risk of serious harm to him and consciously disregarded that risk. At the time he told Officer Skidmore that the problems were starting up again, Plaintiff's attackers in the second incident, inmates Jarrell and Jefferson, had not yet been moved into the cell block, so Officer Skidmore could not have known of the risk they would pose to him. Additionally, all Plaintiff has shown is that he alerted Officer Skidmore that he was being subjected to verbal threats and taunts, and these do not violate the Eighth Amendment. McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); Emmons v. McLaughlin, 874 F.2d 352, 353 (6th Cir. 1989). Accordingly, Plaintiff has failed to state a deprivation of a constitutional right, and therefore, Defendants Skidmore and Stancoti are entitled to qualified immunity.

### C. Service of Process

In addition to naming Shannon Markle, Officer Skidmore, and Officer Stancoti as defendants in his complaint, Plaintiff also named Officer Long and John Doe at the Central Regional Jail Medical Department as defendants. Under Federal Rule of Civil Procedure 4(c)(1), Plaintiff is responsible for service of the summons and complaint for each defendant within a

specified time period, however, in this case, since Plaintiff had been granted leave to proceed *in forma pauperis*, the Marshal is responsible for serving the summons and complaint and for filing the return or other acknowledgment of service with the court.

To date, service has not been properly effectuated on Defendants Long and Doe. "[I]n situations where a plaintiff is proceeding in forma pauperis and has been forced to rely on the U.S. Marshals for execution of service, the plaintiff should not be penalized for the failings of the Marshals," Romandette v. Weetabix Co., 807 F.2d 309, 310 (2d Cir. 1986), however if a defendant is not served "the court- on motion or on its own after notice to the plaintiff- must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). In this case, as to Defendant Long, a summons was issued on March 18, 2011, but it was returned unexecuted on April 4, 2011. The return indicated that there had been three individuals known as Officer Long and that none of them were still employed with the West Virginia Regional Jail Authority. Plaintiff then sent a letter to the Court with additional identifying information. He stated that the Officer Long he named in the complaint had been working at the jail within four months of October 2, 2008, and that he was a larger individual, measuring about 6'1" and weighing around 280 pounds. With this information, the undersigned ordered the clerk to re-issue a summons for Officer Long to the United States Marshals Service for service of process. However, on April 25, 2011, the summons was again returned unexecuted, with the return indicating that the individual had been identified as Gary Long, but that he was no longer employed there and there was no forwarding address on file for him. Accordingly, this Court finds the United States Marshals Service has made reasonable efforts to effect service on Officer Long. Further, Plaintiff has failed to provide sufficient information about the defendant to enable the United States Marshals Service to effect service of

process in this case. Plaintiff appears to have provided all the information he has regarding the defendant, and there is no indication in this record that providing additional time would result in receipt of additional information relating to the defendant that would lead to service of process. Therefore, the Court recommends that the complaint against Officer Long be dismissed without prejudice under Federal Rule of Civil Procedure 4(m).

As to "John Doe 'Central Regional Jail Medical Department,'" Plaintiff omitted this defendant from both the caption and parties sections of his pleading, and his sole allegation is that he was refused medical treatment for his medical needs, and threatened by even more serious refusal of medical attention for complaining about his "back problems…and many other aches, pains, bruises and other painful injuries." However, Plaintiff does admit that he was taken to the medical department to have his needs treated, that he received anti-inflammatories, and that he continues to receive pain medication. He only argues that he would like more or different medical treatment. Accordingly, while due to the lack of service, the Court has not gained jurisdiction over this Defendant, Plaintiff's pleading fails to adequately allege a cause of action against this Defendant in that he has not met the pleading requirements of an Eighth Amendment violation. Plaintiff has not shown there is a genuine issue as to whether he suffered from an objectively serious medical condition or whether Defendant Doe acted with a deliberately indifferent state of mind in denying greater or different medical treatment. Therefore, Plaintiff has failed to state a cause of action against this Defendant, and the undersigned recommends dismissal of this Defendant, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### V. RECOMMENDATION

In consideration of the foregoing, the undersigned hereby recommends that Defendant Markle's First Motion to Dismiss (Doc.25) be **GRANTED** based on the plaintiff's failure to

exhaust his administrative remedies. The undersigned also recommends that Defendants Skidmore and Stancoti's Motion for Summary Judgment (Doc. 59) be **GRANTED** on the basis of qualified immunity. Additionally, the undersigned recommends that the claims against Defendant Long be **DISMISSED WITHOUT PREJUDICE** for failure to effectuate service and the claims against Defendant Doe be **DISMISSED WITH PREJUDICE** for failure to state a cause of action. Finally, the undersigned recommends that the plaintiff's complaint (Doc. 2) be **DISMISSED**.

Within fourteen (14) days after being served with a copy of the Report and Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., Senior United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested. In addition, the Clerk shall provide a copy to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:** January 10, 2012

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE