IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICHARD E. KARTMAN,

       Plaintiff,

v.                                Civil Action No. 5:10CV106
                                             (STAMP)

SHANNON MARKLE, OFFICER LONG,
OFFICER STANCOTI, OFFICER SKIDMORE
and JOHN DOE MEDICAL EMPLOYEE,

       Defendants.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING IN PART AND
DECLINING TO AFFIRM AND ADOPT IN PART
REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE;
GRANTING SUMMARY JUDGMENT AS TO DEFENDANTS
STANCOTI AND SKIDMORE;
DENYING MOTION TO DISMISS AS TO DEFENDANT MARKLE;
DISMISSING DEFENDANTS LONG AND DOE
AND ORDERING CASE TO PROCEED**

I.  Background

The pro se[1] plaintiff, Richard E. Kartman, filed a civil rights action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of West Virginia. The complaint names certain employees of the Central Regional Jail in Sutton, West Virginia as defendants and asserts multiple claims based on alleged violations of the plaintiff's Eighth Amendment rights. Specifically, the plaintiff claims that he was assaulted by other inmates at the Central Regional Jail and that the

---

[1]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

defendants were deliberately indifferent to a threat to his physical safety.  The case was later transferred to this district.

On April 18, 2011, defendant Shannon Markle filed a motion to dismiss.  On May 31, 2011, because Officers Skidmore and Stancoti failed to plead or otherwise defend against the complaint, the plaintiff filed a request for entry of default against them.  On June 15, 2011, this Court issued an order directing the Clerk to enter default against defendants Skidmore and Stancoti. Subsequently, defendants Skidmore and Stancoti filed a motion to vacate the default, arguing that their failure to respond to the plaintiff's complaint was inadvertent.  On July 7, 2011, this Court granted the motion to vacate default.

Thereafter, on July 22, 2011, defendants Skidmore and Stancoti filed a motion for summary judgment.  On October 21, 2011, the plaintiff filed a response in opposition to defendant Markle's motion to dismiss.  Also on October 21, 2011, the plaintiff filed a response in opposition to defendants Skidmore and Stancoti's motion for summary judgment.  On November 4, 2011, the defendants filed a reply in support of their motion for summary judgment and motion to dismiss.  The plaintiff then filed a sur-reply.[2]

---

[2]The docket sheet indicates that the summons and the complaint were never served upon Officer Long.  (ECF Nos. 24; 31.)  The April 25, 2011 process receipt and return states that Officer Gary Long is no longer employed with the WVRJA and has no forwarding address. (ECF No. 31.)

On August 16, 2011, the plaintiff filed a motion for leave to file discovery and a declaration in support of this motion. The defendants filed a response to the motion for leave to file discovery on August 31, 2011. The magistrate judge denied the plaintiff's motion for leave to file discovery, finding that the plaintiff had not demonstrated that there is any discoverable evidence beyond that which has already been tendered to him. The plaintiff filed objections to the magistrate judge's order, arguing that he needed a complete description of the inmate grievance procedure he supposedly failed to exhaust. This Court affirmed the order of the magistrate judge denying the motion for leave to file discovery on October 18, 2011.[3]

On January 10, 2012, United States Magistrate Judge David J. Joel issued a report and recommendation recommending that defendant Markle's motion to dismiss be granted, that defendants Skidmore and Stancoti's motion for summary judgment be granted, that the claims against defendant Long be dismissed without prejudice, that the claims against defendant Doe be dismissed with prejudice, and that the plaintiff's complaint be dismissed. The magistrate judge

---

[3]In his objections to the report and recommendation, the plaintiff first argues that the magistrate judge excluded from his report and recommendation facts concerning the court's denial of his requested leave to file discovery. According to the plaintiff, the partial discovery that he requested would not have burdened the defendants. However, as this Court stated in its October 18, 2011 opinion affirming the order of the magistrate judge, at that time, the plaintiff had not demonstrated that there was any discoverable evidence beyond that which had already been tendered to him.

3

advised the parties that, pursuant to 28 U.S.C. § 636(b)(1)(C), any party may file written objections to his proposed findings and recommendations within fourteen days after being served with a copy of the magistrate judge's recommendation.

On January 20, 2012, the plaintiff filed a letter motion requesting an extension of time to file objections to the report and recommendation. This Court granted that motion on January 20, 2012, extending the deadline for objections to February 28, 2012. On March 5, 2012, the plaintiff filed untimely objections to the report and recommendation. For the reasons set forth below, this Court affirms and adopts in part and declines to affirm and adopt in part the report and recommendation of the magistrate judge.

## II.   Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. However, failure to file objections to the magistrate judge's proposed findings and recommendations permits the district court to review the recommendation under the standards that the district court believes are appropriate and, under these circumstances, the parties' right to de novo review is waived. See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Because the plaintiff did not file his objections within the time frame set by this Court, which was extended to accommodate the plaintiff's needs, this Court reviews

4

the report and recommendation of the magistrate judge for clear error with.   However, new evidence presented in the plaintiff's objections necessitates a de novo review of the claims against defendant Markle.

### III.   Discussion

A.   Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action with respect to prison conditions under any federal law must first exhaust all available administrative remedies.  42 U.S.C. § 1997e(a).  Exhaustion under § 1997e(a) is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and applies to "all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002).  If failure to exhaust is apparent from the complaint, federal courts have the authority pursuant to 28 U.S.C. § 1915 to dismiss the case sua sponte.   Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 682 (4th Cir. 2005).

The West Virginia Regional Jail and Correctional Facility Authority provides all inmates with an administrative grievance procedure by which complaints concerning the conditions of confinement may be addressed.[4]  Inmates housed in a West Virginia Regional Jail facility must first file a grievance with the

---

[4]The West Virginia Regional Jail and Correctional Facility Authority has promulgated its procedures through the publication of its "Handbook of Inmate Rules and Procedures," which contains an "Inmate Request and Grievance Procedure."  W. Va. C.S.R. § 94-5-2.

Administrator of the facility on an inmate grievance form provided by jail personnel.   If unsatisfied with the Administrator's decision, an inmate may then file an appeal with the Chief of Operations.   This appeal must be filed within five days of receipt of the Administrator's decision and must include a copy of both the initial complaint and the Administrator's decision.   If still unsatisfied after the response from the Chief of Operations, an inmate may request, within five days of receipt of the decision, a review by the Office of the Executive Director.   Proper exhaustion of a § 1983 claim requires an inmate to file timely and procedurally sound administrative grievances in compliance with the administrative process outlined above.   See Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

The defendants in this case rely upon the affidavit of John L. King, II, Chief of Operations for the West Virginia Regional Jail and Correctional Facility Authority, in support of their argument that the plaintiff failed to exhaust the administrative grievance procedure concerning allegations of wrongdoing by defendant Markle. In his affidavit, Mr. King states that the plaintiff "has not fully availed himself of the Grievance Process." (King Aff. 2.) Significantly, the plaintiff acknowledges in his complaint that he

did not present the facts relating to his complaint in the state prisoner grievance procedure.[5] (Compl. 3.) However, the plaintiff later changes his position with regard to exhaustion of his administrative remedies.

As the magistrate judge explains, in his later pleadings the plaintiff argues that he has, in fact, exhausted his administrative remedies. The plaintiff claims that he filed multiple grievances from September 2008 through November 2008, specifically referencing grievances filed on October 30, 2008, November 3, 2008, November 8, 2008, and November 18, 2008.[6] (Pl.'s Decl. ¶¶ 7; 13; 15-22.) However, the inmate grievance forms attached to the plaintiff's declaration relate to a refusal of medical treatment (Pl.'s Decl. Ex. 2.), unsanitary showers (Pl.'s Decl. Exs. 2; 13.), mail that the plaintiff did not receive (Pl.'s Decl. Ex. 4.), unanswered grievances (Pl.'s Decl. Ex. 5.), and the purchase of a legal guide book (Pl.'s Decl. Ex. 12.). Only the grievance form dated November 18, 2008 attached to the plaintiff's declaration discusses the assault presented in the plaintiff's complaint. (Pl.'s Decl. Ex. 7.)

---

[5]The plaintiff later explains that this was simply a mistake. (Pl.'s Reply 5.)

[6]The plaintiff contends that the November 3rd and November 8th grievances were lost or confiscated when he was sent to segregation on July 19, 2011. (Pl.'s Decl. ¶ 17.)

7

In addition to the grievance forms, the plaintiff also attaches to his declaration certain letters sent to defendant Markle, Mr. King, and Mr. Miller. (Pl.'s Decl. Exs. 1; 8-10.) These letters mention various grievances, some of which relate to the attack that is the subject of the instant complaint. The plaintiff states that he has been assaulted by other inmates, that he is being housed with known enemies, and that he has filed many grievances relating to these assaults. This Court agrees, however, that these letters alone do not provide sufficient evidence that the plaintiff properly filed grievances against defendant Markle regarding the allegations contained in the complaint.

In his objections to the report and recommendation, the plaintiff contends that he has presented sufficient evidence that he exhausted his administrative remedies. The plaintiff points to the inmate grievances attached to his Declaration Concerning Exhaustion of Administrative Remedies and argues that because defendant Markle refused to respond to these grievances, there was no available grievance process. The plaintiff further argues that he specifically addressed defendant Markle's inaction with regard to threats from other inmates in letters written to John King and Terry Miller, which were also attached to his declaration. (Pl.'s Decl. Exs. 8; 9.)

Attached to the plaintiff's objections are two inmate grievance forms dated November 3, 2008 and November 8, 2008.

According to the plaintiff, these two grievances, originally believed to be lost or confiscated, were "found in an old file sent home." (Pl.'s Objs. 6.) Both of these grievances are addressed to defendant Markle and discuss assaults against the plaintiff. (Pl.'s Objs. Exs. 2; 3.) The response/disposition sections of both forms are blank.

The plaintiff's objections and the new evidence that he presents are untimely. However, the magistrate judge's recommendation that the claims against defendant Markle be dismissed is based largely upon the plaintiff's failure to produce copies of the grievances he allegedly filed on November 3, 2008 and November 8, 2008. Now that those grievances have been provided to this Court, the undersigned judge finds it necessary to review them de novo.

Although this Court cannot be certain at this time as to the authenticity of the plaintiff's newly filed grievance forms, there is evidence in the record to at least suggest that the plaintiff filed multiple grievances and letters regarding an assault, or fear of assault, and that he never received a response to these grievances from the Administrator, defendant Markle. The defendants have produced no records to refute the plaintiff's position that his properly-submitted grievances went unanswered.[7]

---

[7]In their reply in support of the motion to dismiss and motion for summary judgment (ECF No. 84.), the defendants argue that the plaintiff's August 26, 2011 grievance form tends to show that the

Further, the defendants do not argue that the Administrator investigated the plaintiff's grievances or took any similar administrative steps. Instead, they rely solely upon the affidavit of Mr. King, which simply states that the plaintiff did not file a grievance to the Executive Director. (King Aff. 2.)

The West Virginia Jail and Correctional Facility Authority Handbook of Inmate Rules and Procedures sets forth the grievance procedure. The Handbook states, in pertinent part:

> The Administrator shall provide a written decision with regard to the grievance to the grieving inmate within twenty-four (24) hours of the receipt of the investigation report. Such written decision shall include a statement of the action taken concerning the grievance, the reasons for such action, and procedures for appeal of the decision.

(Handbook of Inmate Rules and Procedures at 11.) In this case, there is no indication that the plaintiff ever received a written decision with regard to the grievances relating to the allegations contained in this complaint. Thus, it seems that the reason why the plaintiff did not exhaust his administrative remedies by appealing to the Chief of Operations and then to the Executive Director is because he never received an initial response from the Administrator, defendant Markle.

---

plaintiff's other grievances were responded to by the West Virginia Division of Corrections. (Pl.'s Decl. Ex. 3.) Although this particular grievance does contain a response from the Unit Manager, Mr. Hill, it does not indicate whether or not any other grievances filed by the plaintiff received responses.

After conducting this _de novo_ review of the report and recommendation and untimely objections, this Court finds that the plaintiff has offered evidence that calls into question the grievance records and procedures followed at the Central Regional Jail. The November 3rd and November 8th grievance forms, which the magistrate judge did not have the benefit of reviewing, show that the plaintiff attempted to exhaust his administrative remedies, but was denied the response that he needed in order to appeal. _See Boyd v. Corr. Corp. of Am._, 380 F.3d 989, 996 (6th Cir. 2004) (administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance); _Lewis v. Washington_, 300 F.3d 829, 833 (7th Cir. 2002) (stating that prison's failure to timely respond renders administrative remedies unavailable); _Foulk v. Charrier_, 262 F.3d 687, 698 (8th Cir. 2001) (holding that defendants failed to prove non-exhaustion where they presented no evidence to refute plaintiff's contention that he could not pursue grievance further after warden did not respond to his grievance). For these reasons, this Court finds that the defendants have not met their burden of showing that the plaintiff failed to exhaust administrative remedies, and thus, the claims against defendant Markle should not be dismissed at this time. _See Anderson_, 407 F.3d at 683 (stating that an inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the defendant).

11

B. <u>Qualified Immunity</u>[8]

Under <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), analysis of a qualified immunity defense requires a two-part inquiry.[9] The first question is whether the facts alleged, when viewed in the light most favorable to the injured party, "show the officer's conduct violated a constitutional right." <u>Id.</u> If the facts

_____

[8]The defense of qualified immunity is available only to an official sued in his individual or personal capacity, and not to an official sued in his official capacity. <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-68 (1985). In this case, the complaint alleges that the defendants are being sued in their individual and official capacities. (Compl. 4-5.) In his reply (ECF No. 85.), the plaintiff clarifies that his complaint names "only those individuals who were personally responsible for the deprivation of Plaintiff's Constitutional right to be free from a cruel and unusual punishment." (Pl.'s Reply 9.) This Court agrees with the defendants that in his official capacity, Warden Markle is not a "person" for purposes of § 1983 and thus is entitled to Eleventh Amendment immunity. <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989). However, this Court finds that the plaintiff has alleged claims against the defendants in their individual capacities. Therefore, this Court must conduct an analysis of qualified immunity.

[9]Prior to the United States Supreme Court's decision in <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808 (2009), lower federal courts were required to follow a rigid two prong test for determining the existence of qualified immunity. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). Under that test, a court first looks to whether the officer's conduct violated a constitutional right, followed by an analysis of whether the constitutional right was clearly established at the time of the violation. <u>Id.</u> The <u>Pearson</u> court found shortcomings in the <u>Saucier</u> analysis. <u>Pearson</u>, 129 S. Ct. at 818-21. "Adherence to <u>Saucier</u>'s two step protocol departs from the general rule of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable." <u>Id.</u> at 821 (internal quotations omitted). The Supreme Court, though, found that the <u>Saucier</u> procedure was often advantageous, and left open to district courts the "order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case."

alleged fail to make this showing, the inquiry is at an end, and the official is entitled to summary judgment.  Id.  If, however, the facts alleged do show a constitutional injury, the second question is whether the constitutional right was clearly established at the time of the violation.  Id.  Qualified immunity is abrogated only upon a showing that the officer's conduct violated a constitutional right and that such right was clearly established at the time the conduct occurred.  Id.

In this case, the plaintiff alleges that Officers Skidmore and Stancoti failed to protect him from attacks by other inmates and failed to respond quickly after the attacks began.  Deliberate indifference on the part of prison officials to a specific known risk of harm does state an Eighth Amendment claim.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.").  However, not every injury suffered by an inmate at the hands of other inmates translates into constitutional liability for the prison officials responsible for the plaintiff's safety.  Id. at 834.

This Court agrees that in this case, the plaintiff has failed to prove that his Eighth Amendment rights were violated as to defendants Skidmore and Stancoti because he has not shown that

13

defendants Skidmore and Stancoti knew of a substantial risk of serious harm to him and consciously disregarded that risk. Significantly, none of the plaintiff's grievances were addressed to Skidmore or Stancoti. The plaintiff has not alleged that defendant Stancoti knew that the other inmates were going to assault him on October 2, 2008 or again on November 5, 2008. Instead, the plaintiff argues that Officers Skidmore and Stancoti failed to intervene to stop the assaults. Although it may have seemed to the plaintiff that the officers were slow to stop the fight, Officer Stancoti's report suggests that he responded as soon as the plaintiff was attacked. (Pl.'s Am. Aff. ¶ 35.) Additionally, after the October 2, 2008 assault occurred, the officers took action to protect the plaintiff -- he was taken to the Medical Department to be assessed (Pl.'s Decl. Ex. 16.) and later moved into protective custody. (Compl. ¶ 35.)

With regard to Officer Skidmore, the plaintiff alleges that he alerted Officer Skidmore to the fact that he was being subjected to verbal threats, that Skidmore permitted another inmate to be in close proximity to him, and that Skidmore refused to issue a keep-away. (Compl. 13.);(Pl.'s Decl. Ex. 1.) However, the fact that the plaintiff was taunted does not amount to an Eighth Amendment violation. See Brown v. King, No. 5:10cv93, 2011 WL 4074861, at *8 (N.D. W. Va. Aug. 9, 2011) (stating that even the most abusive verbal attacks do not violate the constitution). Accordingly, this

14

Court finds no clear error in the magistrate judge's determination that the plaintiff has failed to state a deprivation of a constitutional right and therefore, defendants Skidmore and Stancoti are entitled to qualified immunity.

In his objections to the report and recommendation, the plaintiff argues that the defendants are not entitled to qualified immunity.  According to the plaintiff, both Officer Skidmore and Officer Stancoti were aware of the obvious and substantial risk of harm to the plaintiff because he had been labeled an informant by another inmate.  The plaintiff also reiterates that the defendants could have prevented him from being assaulted.  Further, the plaintiff argues that the magistrate judge grossly misinterprets defendant Stancoti's October 2, 2008 report.

This Court finds that the magistrate judge did not misinterpret Stancoti's report.  The report states that Officer Stancoti watched inmate Kennedy pace across the dayroom for approximately twenty minutes before he entered the plaintiff's cell and threw a punch.  After another inmate entered the plaintiff's cell, Stancoti says that he radioed in an inmate fight.  The plaintiff pushed his way out of his cell and into the dayroom, at which time Stancoti gave loud verbals commands over the intercom for the inmates to lock down.  Other officers then entered the section and locked it down.  Nothing in Stancoti's report suggests

15

that he stood by and observed the plaintiff being assaulted for nineteen minutes, as the plaintiff claims.  (Compl. 12.)

Even if the officers were aware that the plaintiff had been labeled an informant and had been harassed by other inmates, there is no evidence to suggest that the officers were deliberately indifferent in failing to predict that the plaintiff would be physically attacked by different inmates in different cell blocks.[10] Moreover, there is no evidence in the record to suggest that these officers had the authority to grant the plaintiff's requests for either a keep-away or a transfer to another jail.  Thus, defendants Skidmore and Stancoti are entitled to qualified immunity.

Because this Court finds that the claims against defendant Markle should not be dismissed for failure to exhaust administrative remedies, it must now consider, de novo, whether defendant Markle is entitled to qualified immunity.  The United States Supreme Court has held that prison administrators can be liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help.  Estelle v. Gamble, 429 U.S. 97, 104 (1076) (discussing deliberate indifference to the serious medical needs of prisoners).  "The question of whether the official knew of the risk is subject to demonstration, like any

---

[10]Significantly, after the plaintiff was attacked on October 2, 2008 by inmates Ward and Kennedy, he was moved to another cell block.  (Compl. 9.)  The November 5, 2008 attack was orchestrated by two different inmates: Jefferson and Jarrell. (Compl. 10.)

other question of fact, by inference from circumstantial evidence." <u>Spruce v. Sargent</u>, 149 F.3d 783, 786 (8th Cir. 1998).

In this case, the plaintiff contends that defendant Markle acted with deliberate indifference by failing to protect him from being assaulted, despite being aware that the plaintiff had been threatened by other inmates and previously assaulted. (Compl. 12.) As explained above, under the doctrine of qualified immunity, government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate a clearly established constitutional right of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

It was certainly clearly established at the time of the filing of the plaintiff's complaint that an inmate's constitutional rights could be violated if government officials allowed him to be kept in dangerous conditions of confinement. <u>See</u> <u>Farmer</u>, 511 U.S. at 833 (stating that the Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other prisoners). A prison official shows deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." <u>Id.</u> at 837. This Court finds that a reasonable person in defendant Markle's position in possession of the incident reports of the October 2, 2008 fight, the November grievances, and the letter allegedly submitted by the plaintiff would have known of an

17

excessive risk of harm to the plaintiff and would have taken action. See Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 773 (4th Cir. 2003) (citing cases in which circuit courts of appeal concluded that a prison official acts with deliberate indifference when he ignores repeated requests from a vulnerable inmate to be separated from a fellow inmate who has issued violent threats). The undated letter (Pl.'s Decl. Ex. 1.) and the grievances dated November 3, 2008, November 8, 2008, and November 18, 2008 are all directed to defendant Markle, informing him that the plaintiff was in fear of being assaulted, had been assaulted, and that his safety concerns had not been addressed. Further, incident reports had been prepared regarding the October 2, 2008 attack, and the plaintiff claims that he filed additional grievances on October 30,2008. (Pl.'s Decl. ¶ 13.) The lack of response from defendant Markle at least suggests that he disregarded the risk of harm to the plaintiff. But see Whetstone v. Ellers, No. 3:08CV2306, 2009 WL 3055454, at *8 (M.D. Pa. Sept. 24, 2009) (stating that the Third Circuit Court of Appeals requires a defendant's contemporaneous, personal knowledge and acquiescence in order to establish the personal knowledge necessary to allege an Eighth Amendment deliberate indifference claim). Since the plaintiff's allegations, if true, may amount to violations of his clearly established constitutional rights, defendant Markle is not entitled to qualified immunity.

C.    Service of Process

Rule 4 of the Federal Rules of Civil Procedure provides:

A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

Fed. R. Civ. P. 4(c)(1).  Rule 4 also states:

If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Fed. R. Civ. P. 4(m).  In this case, because the plaintiff was granted leave to proceed in forma pauperis, the United States Marshals Service was responsible for serving the summons and complaint and for filing the return or other acknowledgment of service with the Court.

The report and recommendation explains that service has not been properly effectuated on defendant Long because he is no longer employed at the jail and he left no forwarding address.  This Court agrees that the United States Marshals Service has made multiple reasonable efforts to effect service on Officer Long, but that the plaintiff has failed to provide sufficient information about the defendant in order to serve him.  Therefore, this Court concurs that the complaint must be dismissed without prejudice as against Officer Long pursuant to Rule 4(m).

19

In Count Five of his complaint, the plaintiff alleges that "John Doe" of the Central Regional Jail Medical Department refused to provide him with medical treatment. (Compl. 13.) The plaintiff later omitted defendant Doe from his pleadings. This Court agrees that not only has defendant Doe not been served, but the plaintiff fails to adequately allege a cause of action against him. Instead, the plaintiff simply argues that he would have preferred different medical treatment. This Court finds no clear error in the magistrate judge's conclusion that the plaintiff has failed to state a cause of action against defendant Doe and that he must be dismissed with prejudice.

## IV. <u>Conclusion</u>

This Court DECLINES TO ADOPT the ruling of the magistrate judge with regard to defendant Shannon Markle. Accordingly, for the reasons set forth above, defendant Shannon Markle's first motion to dismiss (ECF No. 25.) is DENIED; defendants Officer Skidmore and Officer Stancoti's motion for summary judgment (ECF No. 59.) is GRANTED; the claims against defendant Officer Long are DISMISSED WITHOUT PREJUDICE; and the claims against defendant John Doe Medical Employee are DISMISSED WITH PREJUDICE. This case shall PROCEED only as to the claims against defendant Shannon Markle, and this Court will enter a separate scheduling order with regard to those claims.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to the pro se plaintiff by certified mail and to counsel of record herein.

DATED:     March 13, 2012


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE