IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


RICHARD E. KARTMAN,

          Plaintiff,

v.                                    Civil Action No. 5:10CV106
                                                  (STAMP)
SHANNON MARKLE, OFFICER LONG,
OFFICER STANCOTI, OFFICER SKIDMORE
and JOHN DOE MEDICAL EMPLOYEE,

          Defendants.


**MEMORANDUM OPINION AND ORDER**
**REGARDING PLAINTIFF AND DEFENDANT'S MOTIONS IN LIMINE AND**
**DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EXPERT WITNESS**

        Pending before this Court are motions in limine filed by the

plaintiff and the defendant[1] and plaintiff's motion to strike

defendant's expert witness, Howard Painter.  The trial in this

civil action is scheduled to commence on July 28, 2015.  This Court

will address those motions in limine and set forth its findings, as

discussed below.[2]

**Defendant's Motions in Limine**

1. Defendant's Motion in Limine to Exclude Evidence Regarding

Future Damages (ECF No. 270) — DENIED IN PART and GRANTED IN PART.

        In his first motion in limine, the defendant seeks to exclude

all evidence and testimony about future damages of the plaintiff.

_____

        [1]The only remaining defendant in the civil action is defendant
Shannon Markle.

        [2]For a more thorough background of this civil action, see ECF
Nos. 155, 188, and 314.

The defendant argues that thus far, the plaintiff failed to present any evidence of future damages. In particular, the defendant contends that the plaintiff needed to provide evidence such as medical records, healthcare costs, and expert testimony. The plaintiff, in opposition to the motion, argues that he has proffered evidence throughout this civil action, such that a jury should be allowed to determine future damages. Here, the plaintiff points to his repeated lack of adequate medical attention, his chronic ailments that affect him today, and the failure of the defendant to implement adequate safety policies.

Future damages may be awarded to an injured party "for, among other things: (1) Residuals or those future effects of an injury which have reduced the capability of an individual to function as a whole [person]; (2) future pain and suffering; (3) loss or impairment of earning capacity; and (4) future medical expenses." Syl. Pt. 2, Cook v. Cook, 607 S.E.2d 353 (W. Va. 2004) (citing Syl. Pt. 7, Jordan v. Bero, 210 S.E.2d 618, 634 (W. Va. 1974)). In order to allow a jury to award future damages, "[t]he permanency or future effect of any injury must be proven with reasonable certainty." Jordan, 210 S.E.2d at syl. pt. 9; see Dowey v. Bonnell, 380 S.E.2d 453 (W. Va. 1989). In proving future damages, expert witness testimony is not required when an injury "is of such a character as to be obvious, the effects of which are reasonably common knowledge." Jordan, 210 S.E.2d at 635. However, if the

injury is obscure, meaning the effects of the injury "are not readily ascertainable, demonstrable, or subject of common knowledge," then "medical or other expert opinion testimony is required." <u>Id.</u>

Based on the case law discussed above, the defendant's motion is DENIED IN PART to the extent that the injuries are obvious. Those obvious injuries may be considered by the jury and do not require expert witness testimony. However, to the extent that the plaintiff wishes to present evidence of "obscure" injuries without expert witness testimony, the defendant's motion is GRANTED IN PART. This Court may consider an appropriate jury instruction after discussing the matter with counsel at trial.

2. <u>Defendant's Motion in Limine to Exclude Expert Testimony Referring to the Propriety of the Defendant's Actions</u> (ECF No. 271) — DENIED.

The defendant argues that this Court should prevent the plaintiff from presenting any evidence referring to the propriety of the defendant's actions. Here, the defendant argues that the plaintiff has only provided conclusions and allegations about the propriety of his actions. The defendant claims that if this Court permits the plaintiff to present such evidence, he will face great prejudice. The plaintiff objects because the defendant's motion, according to the plaintiff, seeks to prohibit any presentation or elicitation of any expert witness testimony regarding the propriety

of the defendant's actions.  Because the plaintiff may cross-examine the defendant's expert witness, any elicited testimony may directly relate to the expert's opinion regarding the propriety of the defendant's actions.  Therefore, the plaintiff believes that the defendant's motion could limit the plaintiff's right to cross-examine the witness.

After reviewing the defendant's motion and the plaintiff's response, the defendant's second motion in limine is DENIED.  The plaintiff may cross-examine the defendant's expert witness if called, but no expert witness may be designated by the plaintiff at this time.  See Reilly v. Pinkus, 338 U.S. 269, 275 (1949) (noting that in the expert witness testimony context, courts should not place "an undue restriction on the right to cross-examine"); Lawrence v. Nutter, 203 F.2d 540, 543 (4th Cir. 1953).

3. Defendant's Motion in Limine Seeking to Proffer a Special Interrogatory to the Jury on Pre-Judgment Interest (ECF No. 272) — GRANTED AS FRAMED.

In the defendant's third motion in limine, he requests that this Court proffer a special interrogatory to the jury regarding pre-judgment interest.  In particular, he seeks to file a liquidated damages interrogatory for the purpose of attaching pre-judgment interest.  The defendant argues that although the nature of the plaintiff's damages is allegedly unknown, the defendant wants to proffer a special interrogatory in case the plaintiff

claims such special or liquidated damages. The plaintiff does not object to the defendant's third motion in limine. The plaintiff does, however, seek to reserve the right to object to the language contained in any special interrogatory that may be proffered.

Based on the position of the parties as expressed in their filings, the defendant's third motion in limine is GRANTED AS FRAMED. Accordingly, this Court will allow the defendant to proffer a special interrogatory concerning pre-judgment interest. However, this Court will rule on the language of such interrogatory at the time of trial.

4. <u>Defendant's Motion in Limine to Exclude Evidence Regarding Claims Against Defendant Officer Skidmore</u> (ECF No. 273) — GRANTED.

The defendant wishes to exclude any evidence that claims that defendant Officer Skidmore inappropriately conducted himself towards the plaintiff. Here, the defendant argues that this Court dismissed defendant Officer Skidmore, and the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") affirmed his dismissal. Further, the defendant contends that referencing defendant Officer Skidmore may confuse the jury. Therefore, the defendant requests that any reference or evidence pertaining to Officer Skidmore be excluded from the trial. The plaintiff objects to the extent that the defendant's motion precludes the plaintiff from presenting relevant evidence about the facts of his case or for impeachment and rebuttal purposes.

As the defendant correctly points out, this Court granted summary judgment in favor of Officer Skidmore. ECF No. 98. On appeal, the Fourth Circuit affirmed that ruling. ECF No. 231 ("[T]he district court correctly determined that Skidmore was entitled to qualified immunity. Accordingly, we affirm the portion of the district court's order granting summary judgment in favor of Skidmore."). Officer Skidmore was dismissed, and that currently is the law of this case. This Court will not revisit that ruling as affirmed by the Fourth Circuit. Therefore, the defendant's fourth motion in limine is GRANTED.

5. Defendant's Motion in Limine to Prohibit Evidence of Disciplinary Actions Against Officer Stancoti (ECF No. 274) — GRANTED AS FRAMED.

The defendant next seeks to exclude any evidence or reference to prior disciplinary actions taken against defendant Officer Stancoti.[3] Specifically, the defendant argues that any alleged evidence of prior and unrelated disciplinary actions does not relate to defendant Officer Stancoti's actions toward the plaintiff. Because those claims are allegedly unrelated to the plaintiff's case, the defendant argues that such evidence must be excluded. The plaintiff objects to the extent that the defendant's motion precludes the plaintiff from using such evidence for

---

[3]This Court granted summary judgment in favor of Officer Stancoti, thereby dismissing the claims against him. ECF No. 314.

impeachment and rebuttal purposes. Based on the relevant federal and West Virginia law, the defendant's fifth motion in limine is GRANTED AS FRAMED. See Fed. R. Evid. 611; Wheeler v. Murphy, 452 S.E.2d 416, 424 (W. Va. 1994) ("Under [West Virginia Rule of Evidence] 611(a), identical to its federal counterpart, the circuit court judge is entitled to exercise broad discretion over the manner in which proceedings are conducted."); State v. Oldaker, 304 S.E.2d 843 (W. Va. 1983). However, Officer Stancoti's disciplinary record may only be used for impeachment purposes.

6. Defendant's Motion in Limine Regarding Claim for Punitive Damages and Motion to Bifurcate Punitive Damages Claim (ECF No. 275) — GRANTED AS FRAMED.

In his final motion in limine, the defendant argues that this Court should (1) exclude any evidence regarding the plaintiff's claim for punitive damages, and (2) in the alternative, bifurcate the plaintiff's punitive damages claim. Here, the defendant argues that the plaintiff has yet to prove, and will be unable to prove, that he is entitled to punitive damages. Accordingly, he seeks to have this Court strike the plaintiff's claim for punitive damages. In the alternative, the defendant argues that the punitive damages claim should be bifurcated from the liability claim. In response, the plaintiff indicates that he is "amenable to whatever procedural process this Court typically employs with regard to punitive damages" in § 1983 actions. ECF No. 280. However, in the interest

7

of judicial economy, the plaintiff contends that the punitive damages claim should be simultaneously presented with the plaintiff's claim under 42 U.S.C. § 1983 ("§ 1983").

Bifurcation of trials is intended to further convenience, avoid delay and prejudice, and to serve the ends of justice. It is appropriate only when the court believes that separation will achieve the purposes of Rule 42 of the Federal Rules of Civil Procedure. 9 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> (1971), sec. 2388. After reviewing the parties' filings and arguments presented, the defendant's sixth motion in limine is GRANTED AS FRAMED. Accordingly, this Court sets forth the following procedure for trial in this action given the granting of the defendant's motion in limine to bifurcate the issue of punitive damages.

During the first phase of trial, the issues of liability should be determined and evidence of wealth or financial condition of the defendant will not be permitted. The issue of compensatory damages will be determined in the first phase. The plaintiff may mention in his opening statement that he is seeking punitive damages but shall not elaborate upon that contention. At the close of the plaintiff's case, the Court will then determine whether he has made a <u>prima facie</u> case for punitive damages.

A special verdict form will be used to determine whether the defendant is liable for compensatory damages only, or in addition,

is also liable for punitive damages.  If the jury determines in the first phase that punitive damages also should be awarded, evidence of the appropriate amount, including that of defendant's wealth or financial condition where relevant, will be permitted in the second phase.  In other words, only if the plaintiff makes a <u>prima facie</u> case for punitive damages and only if the jury determines that punitive damages should be awarded, will this Court then reconvene the jury to hear evidence as to the financial condition or wealth of the defendant in order to arrive at a verdict as to the amount of such punitive damages.  <u>Perrine v. E.I. du Pont de Nemours & Co.</u>, 694 S.E.2d 815, 919-20 (W. Va. 2010) (Ketchum, J., dissenting in part and concurring in part) (citing <u>Transportation Insurance Co. v. Moriel</u>, 879 S.W.2d 10 (Texas 1994))(suggesting the approach cited above by this Court)); <u>Rohrbaugh v. Wal-Mart Stores, Inc.</u>, 572 S.E.2d 881 (W. Va. 2002) ("Generally, trial courts are permitted broad discretion in managing their cases and deciding bifurcation matters . . . . [a] trial court [may decide] to bifurcate the amount of punitive damages in order 'to prevent the jury from being influenced on the substantive claim by evidence of [defendant's] enormous wealth . . . .'"); <u>Rupert v. Sellers</u>, 368 N.Y.S.2d 904 (1975).

### Plaintiff's Motion in Limine

In the plaintiff's motion in limine, he requests the following: (1) to exclude the plaintiff's entire criminal record,

including evidence related to the plaintiff's conviction that resulted in his current imprisonment; (2) to attend the trial in normal, non-prison attire without restraints; (3) to exclude or limit the defendant's expert witness; (4) to preclude the jury from knowing that any award to the plaintiff may warrant attorney's fees and costs; and (5) to exclude any evidence related to the dismissal and motion for summary judgment in favor of the defendants. ECF No. 264. This Court will address each request and set forth its rulings as listed below.

1. <u>To Exclude the Plaintiff's Criminal Record</u> — GRANTED IN PART and DENIED IN PART.

The plaintiff argues that although some discussion of his criminal history is needed to provide background information, the specific facts of his criminal record are irrelevant to his claims. Rather, the plaintiff claims that discussing his criminal record will prove extremely prejudicial. The defendant contends that such evidence should be admissible under Rules 403 and 609 of the Federal Rules of Evidence ("Rule 403" and "Rule 609," respectively). In particular, the defendant points out that the jury will be aware that the defendant is employed at a prison, and that the plaintiff is currently incarcerated. Further, several of the plaintiff's past crimes may be considered to be dishonest acts, which he believes are admissible under Rule 609. Listed below are

the particular crimes that the plaintiff seeks to exclude and the rulings of this Court.

   a. <u>First Degree Robbery Conviction (2008)</u>

Under Rule 609, in the civil action context, evidence of a conviction of crime that is "punishable by death or by imprisonment for more than one year" must be admitted, subject to Rule 403. Fed. R. Evid. 609(a)(1)(A). As to any crime, regardless of the applicable punishment, "the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement." <u>Id.</u> at (a)(2). However, admission under Rule 609 remains subject to Rule 403, which excludes evidence when its potential for unfair prejudice substantially outweighs its probative value. As the court in <u>United States v. Estrada</u> stated:

> [Rule 609(a)(1)] requires district courts to admit the name of a conviction, its date, and the sentence imposed unless the district court determines that the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' This determination is left to the sound discretion of the district court.

430 F.3d 606, 621 (2d Cir. 2005) (internal citation omitted). Furthermore, evidence of a conviction of a crime is usually not admissible if more than ten years have passed "since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later

11

date." Ghant v. Brown, 930 F.2d 633, 638 n.10 (8th Cir. 1991) (quoting Fed. R. Evid. 609(b)). If more than ten years have passed, then a court may admit evidence of that conviction "only if (1) its probative value . . . substantially outweighs its prejudicial effect; **and** (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b)(1-2)(emphasis added). If a court decides to admit evidence of a prior conviction for impeachment, "the impeaching party 'is generally limited to establishing the bare facts of the conviction: usually the name of the offense, the date of the conviction, and the sentence." Somerville v. Saunders, 2014 WL 272415, at *3 (N.D.N.Y. Jan. 24, 2014) (quoting United States v. Brown, 606 F. Supp. 2d 306, 319 n.8 (E.D.N.Y. 2009) (quoting 4 Weinstein's Federal Evidence § 609.20[2] (2d ed. 2008))).

The plaintiff is apparently currently serving a 60-year sentence for a conviction of first degree robbery. The defendant correctly points out that this is a felony, and may be admitted subject to Rule 403. It is true that the jury will likely be made aware of the plaintiff's conviction, because he is currently incarcerated and the facts of this case arose from his incarceration. However, in light of the danger of unfair prejudice and the risk of misleading the jury, the admissibility of the plaintiff's most recent criminal conviction must be limited.

Indeed, one of the prime factors that a court should consider under Rule 609 is "whether the crime, by its nature, is probative of a lack of veracity." <u>Somerville</u>, 2014 WL 272415 at *3 (internal citations and quotations omitted). The parties may do the following: (1) comment generally about the plaintiff's first degree robbery conviction; (2) make the jury generally aware that defendant Shannon Markle is a prison employee; and (3) indicate that the plaintiff is presently incarcerated and was incarcerated at the time of events involving this civil action. However, the parties may not present evidence of the particular facts or evidence which constituted the plaintiff's conviction.

   b.  <u>Passing a Bad Check (2007)</u>

The plaintiff was convicted of passing a bad check in Ohio in 2007. ECF No. 281. The Ohio Revised Code states the following: "No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored or knowing that a person has ordered or will order stop payment on the check or other negotiable instrument." Ohio Code § 2913.11(B) (2015). The term "defraud," as used under that statute, is defined as "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." <u>Id.</u> at § 2913.01. Further, evidence of a conviction for violating that statute has been admitted under Rule 609(a)(2) for impeachment

purposes because passing a bad check involves both dishonesty and a false statement. See United States v. Mucci, 630 F.2d 737, 743 (10th Cir. 1980) (interpreting a violation of Ohio's statute concerning passing bad checks as an act involving dishonesty and false statement, and thus admissible under Rule 609); Wagner v. Firestone Tire & Rubber Co., 890 F.2d 652, 655 n.3 (3d Cir. 1989) (noting that prior convictions for passing bad checks involved dishonest activity, and were thus admissible under Rule 609(a)(2) for impeachment purposes); see United States v. Rogers, 853 F.2d 249, 252 (4th Cir. 1988) (finding that evidence of a conviction for passing a bad check under North Carolina law was admissible under Rule 609, when the statutes used "with intent to cheat and defraud another" language and maintained a knowledge of insufficient funds element); United States v. Collier, 527 F.3d 695, 700 (8th Cir. 2008).

Based on the law discussed above, the plaintiff's 2007 conviction for passing a bad check may be admissible for impeachment purposes, pursuant to Rule 609(a)(2). The relevant Ohio statute requires both an element of intent to commit fraud ("with purpose to defraud") and knowledge that the check is bad ("knowing that it will be dishonored"). In addition to the elements of that crime under Ohio law, the definition of "defraud" under that statute demonstrates that the plaintiff's 2007 conviction for passing a bad check involves dishonesty and false

statements, and thus falls under Rule 609(a)(2). Therefore, evidence of the plaintiff's 2007 conviction for passing a bad check may be admitted for only impeachment purposes.

    c. <u>Felony Attempted Robbery and Felony Theft (2003)</u>

In 2003, the plaintiff was convicted of attempted robbery and felony theft. ECF No. 319. Because this offense occurred over ten years ago, Rule 609(b) applies. As discussed earlier, if more than ten years have passed, then a court may admit evidence of that conviction only if "(1) its probative value . . . substantially outweighs its prejudicial effect; **and** (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b)(1-2) (emphasis added). As one court stated, "'[t]he general rule [referring to Rule 609(b)] is inadmissibility. It is only when the court admits evidence of a conviction over ten years old that the court must engage in a balancing test on the record.'" <u>United States v. Hamilton</u>, 48 F.3d 149, 154 (5th Cir. 1995) (quoting <u>United States v. Estes</u>, 994 F.2d 147, 149 (5th Cir. 1993)); <u>United States v. Nguyen</u>, 542 F.3d 275, 279 (1st Cir. 2008) ("In short, Rule 609(b) is a rule of exclusion that bars the admission of a stale felony conviction for impeachment purposes in the absence of a particularized showing that its probative value substantially outweighs its potential for unfair prejudice.").

Moreover, district courts have broad discretion when choosing to apply Rule 609(b). <u>Estes</u>, 994 F.2d at 148.

After reviewing the record and filings, this Court finds that the plaintiff's 2003 conviction for attempted robbery and theft should not be admitted under Rule 609(b). The defendant provided the plaintiff with notice of his intent to use that conviction, which is a requirement under Rule 609(b)(2). ECF No. 319. However, that is only one of two requirements. Evidence of a conviction that is older than ten years, such as this one, is only admissible if its probative value substantially outweighs its prejudicial effect. In this situation, evidence of those convictions does not substantially outweigh the prejudicial effect. Rule 609(b) should be considered a rule of inadmissibility, where convictions over ten years old "'should be admitted very rarely and only in exceptional circumstances,'as 'convictions over [10] years old generally do not have much probative value.'" <u>Somerville</u>, 2014 WL 272415 at *4, *10 n.11 (quoting <u>Brown</u>, 606 F. Supp. 2d at 313 (quoting Fed. R. Evid. 609(b), Advisory Committee's Note))). Moreover, the nature of the convictions, which are attempted robbery and theft, do not strongly show that "by [their] nature, [those convictions are] probative of a lack of veracity." <u>Somerville</u>, 2014 WL 272415 at *4 (internal citations omitted).

In further support of that finding, several courts have found that, in the Rule 609(a)(2) context, violent crimes like robbery

and theft may not sufficiently involve dishonesty. Thus, courts in that situation have excluded evidence of such convictions. <u>Walker v. Horn</u>, 385 F.3d 321, 334 (3d Cir. 2004) ("[A]lthough robbery is certainly a very serious crime, it does not involve communicative or expressive dishonesty. Therefore, the district court erred by holding that robbery is a crime involving dishonesty that is automatically admissible under Rule 609(a)(2)."); <u>United States v. Hayes</u>, 553 F.2d 824 (2d Cir. 1977); <u>United States v. Williams</u>, 445 F.2d 421 (10th Cir. 1971); <u>Gordon v. United States</u>, 383 F.2d 936 (D.C. Cir. 1967). Indeed, Rule 609(a) is a much more inclusive section than Rule 609(b). It is significant that courts view convictions like robbery or theft as insufficiently "probative of a lack of veracity," which is a prime factor in balancing probative value against prejudicial effect under Rule 609. <u>Somerville</u>, 2014 WL 272415 at *4 (internal citations and quotations omitted); <u>see Daniels v. Loizzo</u>, 986 F. Supp. 245, 250 (S.D.N.Y. 1997). Further, the fact courts exclude such convictions, especially under the more inclusive section of Rule 609(a), should not be taken lightly. Here, the plaintiff's conviction for attempted robbery and theft has insufficient impeachment value so as to admit evidence of that conviction. Therefore, evidence of the plaintiff's 2003 conviction for attempted robbery and theft is not admissible for impeachment purposes under Rule 609(b).

d. <u>Passing a Bad Check (1999)</u>

In 1999, the plaintiff was convicted of passing a bad check, in violation of Ohio Code § 2913.11(B)(2015). ECF No. 319 Ex. D. As stated earlier, evidence of a conviction of a crime is usually not admissible if more than ten years have passed "'since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date.'" <u>Ghant</u>, 930 F.2d at 638 n.10 (quoting Fed. R. Evid. 609(b)). If more than ten years have passed, then a court may admit evidence of that conviction only if "(1) its probative value . . . substantially outweighs its prejudicial effect; **and** (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b)(1-2) (emphasis added). This Court also stated that Rule 609(b) is generally a rule of inadmissibility as to convictions that are over ten years old. However, unlike the plaintiff's convictions of attempted robbery and theft, a conviction for passing a bad check is much more "probative of a lack of veracity," which is a prime factor in balancing probative value against prejudicial effect under Rule 609. <u>Somerville</u>, 2014 WL 272415 at *4 (internal citations and quotations omitted). In this situation, the impeachment value of passing a bad check, which under Ohio's statute maintains elements of intent to commit fraud and knowledge of committing fraud, is

significant.  See, e.g., United States v. Colon, 480 F. App'x 509, 513 (11th Cir. 2012).  Furthermore, the 1999 conviction's probative value substantially outweighs its prejudicial effect, and admitting evidence of that conviction for impeachment purposes will be neither duplicitous nor cumulative.  See United States v. Heath, 447 F.3d 535, 539 (7th Cir. 2006) (affirming exclusion of evidence of convictions for passing bad checks that were over ten years old when several similar convictions existed that were within a ten year span and were admitted).  In further compliance with Rule 609(b), the defendant provided the plaintiff with reasonable notice of his intent to use the conviction.  ECF No. 319.  Therefore, the plaintiff's 1999 conviction for passing a bad check may be admitted only for impeachment purposes under Rule 609(b).

2. To Attend the Trial in Non-Prison Attire Without Restraints — GRANTED.

As to the plaintiff's request about his appearance, the plaintiff believes that wearing his prison uniform will unfairly prejudice him.  However, the defendant argues that the jury will already know that the plaintiff is incarcerated.  Further, the defendant asserts that the plaintiff may pose a security risk if he is not restrained.

"In a civil action involving a prisoner, courts should, as a matter of fundamental fairness, be wary of requiring a litigant to appear in restraints."  Ellis v. Navarro, 2012 WL 3580284, at *5

(N.D. Cal. Aug. 17, 2012); <u>Ramirez v. Delong</u>, 2010 WL 3118527 (W.D. Wisc. Jul. 30, 2010).  It is a true that a prisoner does "not have a constitutional right to wear particular clothing in civil trials."  <u>Ramirez</u>, 2010 WL 3118527 at *1.  However, the Supreme Court of the United States has stated that a "constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment."  <u>Estelle v. Williams</u>, 425 U.S. 501, 504-05 (1976).  As provided by the court in <u>Ramirez</u>, "[e]ven when the plaintiff's status as a prisoner is known, the infamous orange jump suit may have an important, if subtle, effect on the way a juror perceives the plaintiff, serving as a 'constant reminder' that the prisoner is in a different class from the other litigants and suggests he is entitled to less respect."  2010 WL 3118527 at *1 (quoting <u>Estelle</u>, 425 U.S. at 504-05).

Based on the law set forth above, the plaintiff's request to appear at the trial in non-prison attire without restraints is GRANTED.  However, that ruling is subject to the rules and procedures of the United States Marshals Service.  Plaintiff's counsel shall contact the United States Marshals Service located in the Wheeling Office for further information as to what attire may be worn and how clothing is to be provided.

3. <u>To Exclude or Limit the Defendant's Expert Witness</u> — DENIED.

The plaintiff argues that the defendant's expert witness lacks sufficient credibility.  However, the defendant believes that his

expert possesses sufficient credibility so as to admit his expert witness's testimony.

The introduction of expert opinion testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 requires the trial judge to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). This "gatekeeping" obligation applies to all expert testimony, and not just the scientific testimony at issue in Daubert. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148 (1999). Importantly, "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee's Note.

The first prong of this inquiry necessitates an examination of whether the reasoning and methodology underlying the expert's proffered opinion is reliable — that is, whether it is supported by validation adequate to render it trustworthy. See Daubert, 509 U.S. at 590 & n.9. As the Supreme Court explained in Daubert, the

subject of an expert's testimony must be scientific knowledge, meaning that it is grounded in the methods and procedures of science and consists of more than subjective belief or unsupported speculation. Id. at 590.

The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue. See id. at 591-92. Daubert delineates five factors to assist the trial court in determining whether an expert's testimony will assist the trier of fact: (1) whether the expert's technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error associated with a technique; (4) if standards control the use of a technique; and (5) if the technique is generally accepted within the scientific community. Id. at 593-94. While the Supreme Court stated that those factors are designed to assist courts, the Court also cautioned, "[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity — and thus the evidentiary relevance and reliability — of the principles that underlie a proposed submission." Id. at 594-95. Therefore, the trial judge's evaluation of whether expert testimony is admissible under Rule 702 is a flexible one, and the judge is given broad discretion in the determination of whether particular expert testimony is relevant and reliable. See Oglesby v. Gen. Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999); see also Kumho Tire, 526

U.S. at 152. However, a witness may not generally offer to the jury his opinion as to the governing law at issue in the case. Adalman v. Baker, Watts & Co., 807 F.2d 359, 366 (4th Cir. 1986) (affirming the exclusion of testimony by expert witness which included legal conclusions), disapproved on other grounds in Pinter v. Dahl, 486 U.S. 622 (1988).

It is the role of the trial judge to distinguish opinion testimony that embraces an ultimate issue of fact from opinion testimony that states a legal conclusion. See Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983). As many courts have recognized, it is often difficult to draw the line "between proper expert evidence as to facts, the inferences to be drawn from those facts, and the opinions of the expert, on the one hand, and the testimony as to the meaning and applicability of the appropriate law, on the other hand." Adalman, 807 F.2d at 366. Nevertheless, it is the duty of the court to "state to the jury the meaning and applicability of the appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law." Id.

Finally, it is important to recognize that, notwithstanding a trial court's "gatekeeping" function as to expert opinion, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and

appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 595.

Applying the law provided above, this Court finds that the defendant's expert witness's background qualifies him to testify regarding the propriety of both the defendant's actions and the policies, practices, and procedures used at the Central Regional Jail. The defendant's expert witness, Howard H. Painter, has over 35 years of experience in "operation, supervision and management of correctional facilities and systems in West Virginia." ECF No. 299. Mr. Painter's curriculum vitae sets forth a long list of professional experience, special courses, and papers presented that reveal his extensive correctional facilities and systems background and enable him capable of rendering an opinion in this case. ECF No. 299 Ex. B. During his analysis, Mr. Painter reviewed the following: (1) the plaintiff's complaint (2) documentation about the plaintiff's living unit assignments; (3) sworn statements from an inmate and the plaintiff; (4) the plaintiff's deposition transcript; (5) a letter to the plaintiff from Jason Davis; (6) all requests and grievances contained in the plaintiff's inmate file; and (7) defendant Shannon Markle's deposition transcript. Id. at Ex. A. Clearly, Mr. Painter reviewed a variety of materials in forming his opinion in this case, applying his knowledge and experience to the facts. As the Fourth Circuit has stated, "Rule 702 further provides that a witness may be qualified as an expert

on the grounds of 'knowledge, skill, experience, training, <u>or</u> education." <u>Friendship Heights Associates v. Vlastimil Koubek, A.I.A.</u>, 785 F.2d 1154, 1159-60 (4th Cir. 1986) (emphasis in original) (quoting Fed. R. Evid. 702)). This Court finds that Mr. Painter has sufficient education, knowledge, experience, and training to make his testimony admissible under Rule 702. <u>See Friendship Heights Associates v</u>, 785 F.2d at 1159-60; <u>Garrett v. Desa Industries, Inc.</u>, 705 F.2d 721 (4th Cir. 1983) (noting that the trial court has broad discretion in determining whether to admit expert testimony).

An additional consideration under Rule 702 is "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving the factual dispute." <u>Daubert</u>, 509 U.S. at 591 (quoting <u>United States v. Downing</u>, 753 F.2d 1224, 1242 (3d Cir. 1985)). The consideration is one of "fit." In other words, will the expert testimony be helpful to the jury. This Court finds that Mr. Painter's testimony may provide information useful to a jury. Additionally, this Court intends to give detailed instructions as to how the jury is to consider expert testimony, allowing the jury to decide what weight to give Mr. Painter's testimony. Therefore, the plaintiff's request to limit or exclude the testimony of the defendant's expert witness must be DENIED.

4. <u>To Preclude the Jury from Knowing that Any Award to the Plaintiff May Warrant Attorney's Fees and Costs</u> — GRANTED IN PART BY AGREEMENT.

The plaintiff believes that presenting evidence of any potential award of attorney's fees will prove prejudicial. In his response, the defendant states he does not intend to present evidence about those fees. However, the defendant points out that should a verdict be returned for the plaintiff, the jurors should not consider attorney's fees in their calculations. Based on the parties' apparent agreement on the issue, the plaintiff's request is GRANTED. <u>See, e.g.</u>, <u>Collins v. Alco Parking Corp.</u>, 448 F.3d 652, 657 (3d Cir. 2006); <u>Fisher v. City of Memphis</u>, 234 F.3d 312, 319 (6th Cir. 2000) (finding that the district court did not err in failing to instruct the jury about attorney's fees); <u>Brooks v. Cook</u>, 938 F.2d 1048, 1051 (9th Cir. 1991) (finding that the district court abused its discretion by providing the jury with information about the possibility of awarding fees, and stating that "[t]he award of attorneys' fees is a matter of law for the judge, not the jury."); <u>Lehrman v. Gulf Oil Corp.</u>, 500 F.2d 659, 667 (5th Cir. 1974) (noting in the antitrust context that if "mentioning the trebling provisions would lower jury verdicts then the very purpose for which the provision is designed may be frustrated.").

5. <u>To Exclude Any Reference or Evidence Related to the Dismissal and Motion for Summary Judgment in Favor of the Defendants</u> — GRANTED.

Finally, the plaintiff argues that referencing the prior dismissal of the defendants in this case will not only prove prejudicial, but will also confuse the jury. The defendant does not object to the plaintiff's request to limit the discussion about the dismissal of certain defendants. However, the defendant notes that in his fourth motion in limine, he believes that the plaintiff may reference certain defendant officers that allegedly harmed the plaintiff. Therefore, the defendant wants to reserve the opportunity to introduce evidence of those dismissed defendants if the plaintiff "opens the door."

Similar to this Court's ruling regarding the defendant's fourth motion in limine, the only remaining defendant in this civil action is defendant Markle. As discussed above, this is currently the law of the case, and this Court will not revisit the rulings as to those dismissed defendants. Therefore, the plaintiff's request is GRANTED, subject to the defendant's "opening the door" request. Should the dismissal of prior defendants arise during the trial, the parties may propose an appropriate limiting instruction that the Court may consider.

<u>Plaintiff's Motion to Strike Defendant's Expert Witness Howard Painter</u> (ECF No. 266) — DENIED.

Plaintiff has also filed a separate motion to strike defendant's expert witness Howard Painter. The reasons for that motion are similar to those stated in his motion in limine to exclude or limit the defendant's expert witness. For the reasons stated above with respect to that motion in limine, plaintiff's motion to strike is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    June 29, 2015

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE